UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 20-10846 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | Section "A" |
| Debtor. | Chapter 11 |
| JAMES ADAMS, et al., | Civil Action No. 22-01738 |
| Appellants, | Section "T-3" |
| VERSUS | Judge Greg G. Guidry |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, et al., | Magistrate Judge Dana Douglas |
| Appellees. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS APPEAL

This memorandum is submitted on behalf of The Roman Catholic Church of the Archdiocese of New Orleans (the "**Debtor**" or "**Archdiocese**") in support of its motion to dismiss the above-captioned appeal, filed by James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson (collectively, the "**Appellants**").

### I. Introduction

This is an appeal from the Bankruptcy Court's order (i) finding that counsel to four of six claimants who served on a creditors' committee at that time violated the Bankruptcy Court's Protective Order; and (ii) directing the Office of the United States Trustee to remove that attorney's clients from the committee.

As more fully set forth below, Appellants lack standing to appeal because they have suffered no direct, financial harm. Additionally, Appellants did not seek leave to appeal the

Bankruptcy Court's interlocutory order, and they are not entitled to leave because their appeal does not involve a pure question of law.  For these reasons, this appeal must be dismissed.

## II.     Procedural History

### A.  The Petition Date and Appointment of the Committees.

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**"), commencing a chapter 11 case (the "**Bankruptcy Case**").  [Bankruptcy Court, ECF No. 1].

The Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") on May 20, 2020 [Bankruptcy Court, ECF No. 94], which Committee was subsequently reconstituted several times.  As of October 8, 2020, the six-member Committee was comprised solely of tort claimants alleging abuse by clergy.  [Bankruptcy Court, ECF No. 478].

The Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**") was appointed on March 5, 2021.  [Bankruptcy Court, ECF Nos. 772 & 792].

### B.  Disclosure of Confidential Information in Violation of the Protective Order.

On August 3, 2020, the Bankruptcy Court entered a Protective Order to protect highly confidential and sensitive information produced in discovery in the Bankruptcy Case.  [Bankruptcy Court, ECF No. 305].[2]  The Protective Order allowed receiving parties to use information marked

---

[2] The Bankruptcy Court subsequently amended the Protective Order at various times throughout the Bankruptcy Case to add certain parties and provisions.  *See* Amended Protective Order [Bankruptcy Court, ECF No. 729]; Supplemental and Amended Protective Order [Bankruptcy Court, ECF No. 885]; Second Supplemental and Amended Protective Order [Bankruptcy Court, ECF No. 1120].

2

confidential solely for purposes of the litigation and prohibited the use or disclosure of confidential information for any other purpose. [Bankruptcy Court, ECF No. 729, ¶ 9].

In response to discovery requests, the Debtor produced certain highly confidential documents to the Committee that were marked confidential pursuant to the terms of the Protective Order.

In January 2022, the Debtor discovered that certain confidential information that was contained in documents produced by the Debtor to the Committee had been wrongfully disclosed to third parties and the media in violation of the Protective Order. As a result, on January 20, 2022, the Debtor filed a sealed motion with the Bankruptcy Court entitled *Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "**Sealed Motion to Compel**") [Bankruptcy Court, ECF No. 1256].

The Bankruptcy Court, in its discretion, held several sealed status conferences with counsel for the Debtor and the Committee to discuss the allegations raised in the Sealed Motion to Compel. [Bankruptcy Court, ECF Nos. 1290, 1308, 1414, 1536, & 1576]. Counsel for the Debtor and the Committee agreed to issue discovery to a third party to obtain information regarding a possible breach of the Protective Order.

**C.  The UST Investigation.**

On April 25, 2022, the Bankruptcy Court issued an Order (the "**April 25, 2022 Order**"), directing the UST to conduct an independent investigation into allegations regarding the dissemination of highly confidential and sensitive information in violation of the Protective Order. [Bankruptcy Court, ECF No. 1468, p. 2]. The Bankruptcy Court emphasized that, after reviewing the discovery responses regarding the alleged violation, it was

> very concerned about the possibility of intentional dissemination of highly confidential information in violation of this Court's Protective Order, as well as the timing of any such breach, and the negative impact it has on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in this case to proceed in good-faith mediation of claims asserted against the estate.

[*Id.*]. The Bankruptcy Court ordered the UST to complete its investigation and file "under seal" a Statement of Position on or before June 3, 2022. [*Id.*]. The April 25, 2022 Order also announced that, after reviewing the Statement of Position, the Bankruptcy Court would "schedule a further hearing to determine what action, if any, should be, taken." [*Id.*].

On June 3, 2022, the UST submitted to the Bankruptcy Court a report under seal, as ordered (the "**UST Report**"). [Bankruptcy Court, ECF No. 1572].

**D.  The Bankruptcy Court's June 7, 2022 Order and the UST's June 7, 2022 Notice.**

Based on the UST's Report, on June 7, 2022, the Bankruptcy Court entered an Order (the "**June 7, 2022 Order**"), among other things, finding that (i) attorney Richard C. Trahant ("**Mr. Trahant**") had read and was bound by the Protective Order; (ii) Mr. Trahant knew that he was bound by the Protective Order; and (iii) beginning on December 31, 2021, Mr. Trahant provided on multiple occasions confidential information he received to third parties and the media in direct violation of the Protective Order. [Bankruptcy Court, ECF No. 1574, p. 3]. The Bankruptcy Court also found that Mr. Trahant's disclosures and violation of the Protective Order was "knowing and willful." [*Id.*].[3] Mr. Trahant serves as personal counsel to Appellants, four of the six individual

---

[3] As noted in the June 7, 2022 Order, the UST Report leaves unresolved serious questions regarding the extent of the information provided to third parties and the media by Mr. Trahant and whether other documents or sensitive information were provided to the media by someone else. [Bankruptcy Court, ECF No. 1574, p. 4].

4

claimants who served on the Committee at that time; Mr. Trahant also represents approximately 78 other claimants.[4]

As such, the June 7, 2022 Order also directed the UST to relieve the four members of the Committee represented by Mr. Trahant from service on the Committee. [Bankruptcy Court, ECF No. 1574, p. 5]. That same day, the UST filed a *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors* (the "**June 7, 2022 Notice**") [Bankruptcy Court, ECF No. 1575], thereby removing the Appellants, and leaving on the Committee the two members who are not individually represented by Mr. Trahant.[5]

**E. The Notices of Appeal.**

On June 10, 2022, the Appellants filed a Notice of Appeal of the June 7, 2022 Order and the June 7, 2022 Notice, thereby giving rise to this appeal. [R. Doc. 1]. Also, on June 10, 2022, Mr. Trahant filed a Notice of Appeal of the June 7, 2022 Order. [Bankruptcy Court, ECF No. 1582]. Mr. Trahant's appeal was docketed in this Court as Civil Action No. 22-1740.

The Committee, in turn, filed a Notice of Appeal and a Motion for Leave to Appeal on June 24, 2022, challenging both the June 7, 2022 Order and the June 7, 2022 Notice. [Bankruptcy Court, ECF Nos. 1630 & 1631]. This Court denied the Committee's Motion for Leave to Appeal on July 14, 2022 on the basis that the Committee lacks appellate standing. [Civil Action No. 22-1996, R. Doc. 8].

---

[4] *See* Richard C. Trahant's *Statement Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*. [Bankruptcy Court, ECF No. 1333].

[5] On June 21, 2022, the UST filed another *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors* [Bankruptcy Court, ECF No. 1618], thereby adding three new members to the Committee.

### III. Law and Argument

**A. The Appellants Lack Standing to Prosecute this Appeal.**

"[S]tanding to appeal a bankruptcy court order is, of necessity, quite limited." *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021) (quoting *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018)). To determine whether a party has standing to appeal a bankruptcy court order, the Fifth Circuit uses the "person aggrieved" test, which "is an even more exacting standard than traditional constitutional standing." *Id.* (internal citations and quotation marks omitted). The appellant must show that she is "directly, adversely, and financially impacted by a bankruptcy order." *Id.* (quoting *In re Technicool*, 896 F.3d at 384). "Such standing must be connected to the exact order being appealed as opposed to the proceedings more generally." *Id.* The Fifth Circuit has explained "that the *order* of the bankruptcy court must directly and adversely affect the appellant pecuniarily." *Id.* (quoting *Fortune Natural Res. Corp. v. U.S. Dep't of the Interior*, 806 F.3d 363, 367 (5th Cir. 2015) (emphasis in original)).

The Fifth Circuit has described the rationale for the additional standing requirement as follows:

> . . . [D]isgruntled litigants may [not] appeal every bankruptcy court order willy-nilly. Quite the contrary. Bankruptcy cases often involve numerous parties with conflicting and overlapping interests. Allowing each and every party to appeal each and every order would clog up the system and bog down the courts. Given the specter of such sclerotic litigation, standing to appeal a bankruptcy court order is, of necessity, quite limited.

*NexPoint Advisors, LP v. Pachulski Stang Ziehl & Jones LLP (In re Highland Capital Mgmt., LP)*, No. 21-2086, 2022 U.S. Dist. LEXIS 83142, at *5 (N.D. Tex. May 9, 2022) (quoting *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018)). In effect, "bankruptcy standing requires a 'higher causal nexus between act and injury.'" *Technicool Sys., Inc.*, 896 F.3d at 386-87 (quoting

6

*Fortune Natural Res. Corp.*, 806 F.3d at 366). As explained by the Fifth Circuit, "This restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it. Thus in bankruptcy litigation, as in life, 'the more money we come across, the more problems we see.'" *Id.* at 387 (internal citations omitted).

Here, the Appellants cannot identify how the June 7, 2022 Order financially harmed them. Nothing in the June 7, 2022 Order impaired their status as creditors or affected their unsecured claims. Indeed, as explained below, the Bankruptcy Court explicitly preserved the right of the Appellants to choose their counsel. Moreover, the Appellants cannot show that the June 7, 2022 Order had a financial effect on them. *See, e.g.*, [Civil Action No. 22-1996, R. Doc. 8, p. 4 n. 28]. This lack of financial interest in the June 7, 2022 Order is fatal to their appellate standing. *See In re Victory Mkts.*, 195 B.R. 9, 17-18 (N.D.N.Y. 1996) (dismissing unsecured creditor's appeal of bankruptcy court order excluding him from the committee for lack of standing).

A party "may not meet the 'person aggrieved' doctrine simply by virtue of attacking the inherent fairness of the bankruptcy proceedings." *Valley Nat'l Bank v. Warren (In re Westport Holdings Tampa, LP)*, No. 21-11767, 2022 U.S. App. LEXIS 8480, at *11 (11th Cir. Mar. 31, 2022) (citing *Thankkar v. DCT Sys. Grp., LLC (In re Bay Circle Props.)*, 955 F.3d 874, 880 (11th Cir. 2020)). As discussed above, a party must show a direct harm **_and_** hold an interest within the scope of the Bankruptcy Code. *Bay Circle Props.*, 955 F.3d at 880. Because the Appellants have shown neither, they lack standing to prosecute this appeal.

**B. This Court Lacks Jurisdiction to Consider the Appeal.**

Appeals from bankruptcy court orders are governed by 28 U.S.C. § 158. Under § 158(a), district courts "have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2)

7

from [certain] interlocutory orders and decrees issued under section 1121(d) of title 11 . . . ; and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a).

Although the Bankruptcy Court's June 7, 2022 Order is an interlocutory order, Appellants did not seek leave to file an appeal. Moreover, Appellants are not entitled to leave because the appeal does not involve a pure question of law. Therefore, this Court lacks jurisdiction to consider their appeal.

### a. The Bankruptcy Court's June 7, 2022 Order Is an Interlocutory Order.

As conceded by the Committee,[6] the relatively few courts that have considered appeals of orders reconstituting official committees have all concluded that reconstitution orders are interlocutory. *E.g., Mirant Ams. Energy Mktg., L.P. v. The Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-6274, 2003 WL 22327118, at *2 (S.D.N.Y. Oct. 10, 2003); *Masters, Mates & Pilots Plans v. Lykes Bros. S.S. Co., Inc. (In re Lykes Bros. S.S. Co., Inc.)*, 200 B.R. 933, 937-38 (M.D. Fla. 1996); *In re Victory Mkts., Inc.*, 195 B.R. at 12-13. As such, a party wishing to appeal such an order (which is not appealable as of right) must obtain leave of court. 28 U.S.C. § 158(a)(3).

### b. Appellants Cannot Satisfy the Standard to Appeal from the Bankruptcy Court's Interlocutory Order.

Appellants have not moved for, and have not been granted leave to file, an interlocutory appeal. But even if this Court construes the Notice of Appeal as a motion for leave,[7] the Court

---

[6] *See The Official Committee of Unsecured Creditors' Memorandum in Support of its Motion for Leave to Appeal*, [Civil Action No. 22-1996, R. Doc. 1-1].

[7] With respect to the procedure for obtaining leave to appeal, Federal Rule of Bankruptcy Procedure 8004(d) provides, in relevant part, as follows:

> If an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court or BAP may order the appellant to file a motion for leave, or treat the notice of appeal

must deny such request because Appellants cannot satisfy the requirements for an interlocutory appeal.

### i.   *Interlocutory Appeals of Bankruptcy Court Orders Are Not Favored.*

"The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion." *Stumpf v. McGee (In re O'Connor),* 258 F.3d 392, 399-400 (5th Cir. 2001). Section 158(a)(3) is silent as to the standard for granting leave to appeal, and the Fifth Circuit has not established a hard and fast rule for determining when an interlocutory appeal should be permitted. *Ichinose v. Homer Nat'l Bank*, 946 F.2d 1169, 1176-77 (5th Cir. 1991). District courts in the Fifth Circuit have therefore tended to consider the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders. *See Sims v. Sunnyside Land, LLC*, 425 B.R. 284, 290 (W.D. La. 2010); *In re Turner*, No. 96-1102, 1996 U.S. Dist. LEXIS 4621, at *2-3 (E.D. La. 1996).

The § 1292(b) standard consists of three elements: "(1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation." *Sims*, 425 B.R. at 290 (citing *In re Ichinose*, 946 F.2d at 1177). "Every ground in § 1292(b) must be met in order for the interlocutory appeal to be cconsidered; these are not factors to be weighed

---

as a motion for leave and either grant or deny it. If the court orders that a motion for leave be filed, the appellant must do so within 14 days after the order is entered, unless the order provides otherwise.

Fed. R. Bankr. P. 8004(d). The Fifth Circuit has made clear that a district court cannot impliedly grant leave to appeal merely by ruling on an appeal from the bankruptcy court that is pending before it. *Kingdom Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.),* 845 F.3d 609, 618 (5th Cir. 2016) (citing *Stansbury v. Holloway (In re Holloway),* 370 F. App'x 490, 493 (5th Cir. 2010)). Instead, before reaching the merits of the parties' arguments, the district court must determine whether granting leave to file an interlocutory appeal is warranted.

9

and balanced." *Admiral Ins. Co. v. Willson (In re Cent. La. Grain Coop., Inc.),* 489 B.R. 403, 411 (W.D. La. 2013) (quoting *Panda Energy Int'l, Inc. v. Factory Mut. Ins.,* No. 11-003, 2011 U.S. Dist. LEXIS 17396, *10 (N.D. Tex. Feb. 14, 2011)); *see also In re Turner,* 1996 U.S. Dist. LEXIS 4621, at *3.

In the bankruptcy context, interlocutory appeals are not favored because they "interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties." *In re Hunt Int'l Res. Corp.,* 57 B.R. 371, 372 (N.D. Tex. 1985). For this reason, leave "should be granted only in exceptional situations where allowing such an appeal would avoid protracted and expensive litigation." *Turner*, 1996 U.S. Dist. LEXIS 4621, at *3 (citing *Clark-Dietz & Assoc. v. Basic Constr.*, 702 F.2d 67, 69 (5th Cir. 1983)).

### ii.     *The June 7, 2022 Order Does Not Implicate a Pure Question of Law.*

Appellants are not entitled to pursue an interlocutory appeal because the June 7, 2022 Order does not involve a pure question of law. With regards to the "controlling question of law" element, "[t]he question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Speer v. Tow (In re Royce Homes, LP)*, 466 B.R. 81, 94 (S.D. Tex. 2012) (internal citations omitted). Questions of fact and rulings involving the bankruptcy court's discretion are not the proper subject of interlocutory appeals. *See Turner*, 1996 U.S. Dist. LEXIS at *4-5.

When considered in its proper context, the June 7, 2022 Order implicates, at best, mixed questions of law and fact. As detailed above, the Debtor filed its Sealed Motion to Compel in January 2022 after learning that certain confidential information contained in documents produced by the Debtor to the Committee had been wrongfully disclosed to third parties and the media in violation of the Protective Order. *See supra*, Section II.B. The Bankruptcy Court held several

sealed status conferences with counsel for the Debtor and the Committee, and the parties ultimately issued joint discovery to investigate the potential breach. *Id.* With those discovery responses in hand, the Bankruptcy Court issued its April 25, 2022 Order, directing the UST to conduct an independent investigation and announcing that a further hearing would be scheduled after reviewing the UST Report. *See supra*, Section II.C.

Based on its review of the UST Report and the extensive attachments thereto,[8] the Bankruptcy Court issued its June 7, 2022 Order, finding, among other things, that Mr. Trahant had willfully and knowingly violated the Protective Order on multiple occasions. *See supra*, Section II.D. The June 7, 2022 Order provides in relevant part:

> Trahant's willful breach of this Court's Protective Order clearly disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation. To be sure, Trahant has never served as a member of the Committee; yet, as personal counsel to individual Committee members, Trahant and his team of co-counsel received confidential information from the Debtor. The Court acknowledges that individual Committee members may retain the attorney of their choosing to represent their personal interests in this chapter 11 case and have chosen Trahant and his group. This Court certainly has no intention of invading the attorney-client privilege to modulate the communications between those Committee members and their attorneys; indeed, any attempt to regulate or stop the flow of information or candor that must exist between a client and her attorney is not only a futile endeavor, but would offend a fundamental facet of effective legal representation. Thus, an impasse has been reached.

[Bankruptcy Court, ECF No. 1574, p. 4].

---

[8] The attachments to the UST Report include "78 sworn declarations; 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure; one transcript and one summary of two unsworn telephonic interviews; and numerous documents produced to the UST pursuant to Rule 2004, including relevant telephone and text message logs, electronic transaction reports, and e-mail and letter correspondence." [Bankruptcy Court, ECF No. 1574, p. 3].

In light of the significant, willful violation of the Protective Order, the Bankruptcy Court had to act. But faced with an ***attorney*** who was willfully and knowingly violating court orders, the Bankruptcy Court was met with a Hobson's choice: deprive the Appellants and other claimants of their right to their individual counsel, or remove the Appellants from the Committee.

Although a litigant has a right to choose his or her counsel, a claimant does not have any right to serve on a creditors' committee. Indeed, the involuntary removal of a member from a committee is allowed under the Bankruptcy Code. Such a determination must be made on a case-by-case basis, and there are no hard and fast rules that should apply.[9]

A member of a creditors' committee has a fiduciary duty to all creditors that the committee represents. *In re County of Orange*, 179 B.R. 195, 202-03 (Bankr. C.D. Cal. 1995).

> **The fiduciary duty manifests itself in the area of confidentiality.** Members of an official committee will routinely receive sensitive information about the debtor that is not generally known to the public. If confidential information is disseminated to persons not entitled to receive it, the debtor's operations could be potentially damaged to the detriment of the constituency represented by the committee.

7 Collier on Bankruptcy ¶ 1103.05[2][a] (16th ed. 2022) (emphasis added).

---

[9] *See* 7 Collier on Bankruptcy ¶ 1102.05[3] (16th ed. 2022) (citing *In re Am. W. Airlines*, 142 B.R. 901 (Bankr. D. Ariz. 1992) (UST removed committee member at request of other committee members when member became a DIP lender); *In re First RepublicBank Corp.*, 95 B.R. 58 (Bankr. N.D. Tex. 1988) (upholding UST's decision not to remove creditor from committee because he held claims against both debtor and subsidiary; conflict of interest needs to rise to level of breach of fiduciary duty before removal is mandated); *In re Am. Fed'n of Television & Radio Artists*, 30 B.R. 772 (Bankr. S.D.N.Y. 1983) (creditor's opposing actions of debtor in its individual capacity while serving as member of creditors' committee not inconsistent with creditor's membership on committee); *In re Penn-Dixie Indus., Inc.,* 9 B.R. 941 (Bankr. S.D.N.Y. 1981) (member of equity committee removed for conflict of interest when member also on debtor's board of directors); *In re Penn-Dixie Indus., Inc.,* 9 B.R. 936 (S.D.N.Y. 1981) (affirming determination that interest of stockholder in acquiring debtor did not compel removal from equity committee)).

"The Supreme Court has cautioned that the 'whole body of law' imposes 'the most rigorous responsibilities for fair dealing' on fiduciaries who represent the rights of others." *In re Johns-Manville Corp.*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983) (quoting *Young v. Higbee Co.*, 324 U.S. 204, 213 (1945)). "Good faith, trust and candor are essential to ensure that the work of the committee does not come to a standstill and is completed for the benefit of all unsecured creditors." *Westmoreland Human Opportunities, Inc. v. Walsh*, 327 B.R. 561, 573 (W.D. Pa. 2005). Stated differently, the individuals constituting a committee should be honest, loyal, and trustworthy, without conflicting interests, and with undivided loyalty and allegiance to their constituents. *See In re Realty Assoc. Sec. Corp.*, 61 F. Supp. 574, 578 (E.D.N.Y. 1945). "Without such openness between committee members, the committee becomes ineffectual in its representation of its constituents." *Westmoreland*, 327 B.R. 561 at 575.

"Conflicts of interest on the part of representative persons or committees are . . . not [to] be tolerated." *In re Johns-Manville Corp.*, 26 B.R. at 925 (citing *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262 (1941); *Am. United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138 (1940)). "Thus, where a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service." *Id.* (internal citations omitted).

In light of the extensive body of factual findings underlying the June 7, 2022 Order, the inherent power of the Bankruptcy Court to enforce its own Protective Order and to ensure that committee members and their counsel are acting consistently with their fiduciary duties, and the desire not to interfere with the rights of claimants to choose their own counsel, it is clear that this appeal does not involve a pure question of law.

Rather, the appeal takes issue with the Bankruptcy Court's application of the law to the facts. Such a dispute does not satisfy § 1292(b). *See Gieringer v. Cincinnati Ins. Cos.*, No. 08-267, 2010 U.S. Dist. LEXIS 61086, *12 (E.D. Tenn. June 18, 2010) ("Defendant is challenging this Court's application of law to the facts because of its own disagreement with the outcome, rather than presenting a situation where there are substantial disputes as to the applicable law.").

Thus, leave to file an interlocutory appeal is not appropriate, and this Court is without jurisdiction to consider the appeal.

## Conclusion

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests that the above-captioned appeal be dismissed.

Dated: July 19, 2022    Respectfully submitted,

/s/ Mark A. Mintz
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
EDWARD D. WEGMANN (#13315)
MARK A. MINTZ (#31878)
ALLISON B. KINGSMILL (#36532)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: dwegmann@joneswalker.com
Email: mmintz@joneswalker.com
Email: akingsmill@joneswalker.com

**ATTORNEYS FOR
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

## CERTIFICATE OF SERVICE

    I hereby certify that, on July 19, 2022, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which provides notice of filing to all counsel of record by electronic means.

                                            */s/ Mark A. Mintz*
                                            Mark A. Mintz