**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 22-01738 |
| | * | |
| ROMAN CATHOLIC CHURCH OF THE | * | JUDGE BARRY ASHE |
| ARCHDIOCESE OF NEW ORLEANS | * | |
| | * | MAGISTRATE DOUGLAS |

## <u>REPLY IN SUPPORT OF MOTION TO VACATE JUDGMENT</u>

NOW INTO COURT come Plaintiffs/Appellants, who respectfully submit the instant *Reply in Support of their Motion to Vacate Judgment*, pursuant to F.R.C.P. Rule 60(b). Appellants respectfully submit that the Archdiocese's arguments should be rejected because (a) its procedural arguments would render the Fifth Circuit's stay order meaningless, (b) "harmless error" review is for the Fifth Circuit to apply to this Court's Rule 60(b) analysis, not for this Court to apply to this motion, and (c) the *Liljeberg* factors heavily weigh in Appellants' favor.

**I.     The Archdiocese's procedural arguments would render the Fifth Circuit's remand meaningless.**

In its Opposition, the Archdiocese raised two procedural arguments. First, the Archdiocese argued that the District Court lacks jurisdiction because the Fifth Circuit failed to "authorize this Court to grant the Motion to Vacate". *Opposition*, at 7. Second, the Archdiocese argued that the *Motion to Vacate* is untimely because Rule 60(b) does not apply but, rather, Bankruptcy Rule 8022 which only allows for a 14 day period. *Id.* at 7-8.

Both arguments are misleading. This Court has jurisdiction and was instructed by the Fifth Circuit to "consider" the *Motion to Vacate*. The cases cited by the Archdiocese simply stand for the general proposition that upon filing a notice of appeal, the district court is divested of jurisdiction. However, in the rare instances that a Rule 60(b) motion is filed after an appeal is pending addressing the same judgment, the Fifth Circuit acknowledges that a request just needs to

1

be made of the Fifth Circuit:

> "[A] perfected appeal divests the district court of jurisdiction." *Winchester v. United States Atty. for S.D. of Tex.,* 68 F.3d 947, 950 (5th Cir.1995). Once the notice of appeal has been filed, while the district court may *consider* or *deny* a Rule 60(b) motion (filed more than ten days after entry of the judgment), it no longer has jurisdiction to *grant* such a motion while the appeal is pending. *Id.* at 949. " 'When the district court is inclined to *grant* the 60(b) motion, ... then it is necessary to obtain the leave of the court of appeals. *Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion.*' " *Id.* (quoting *Travelers Ins. Co. v. Liljeberg Enters. Inc.,* 38 F.3d 1404, 1407 n. 3 (5th Cir.1994)). If the district court " 'indicates that it will grant the motion, the appellant should then make a motion in the Court of Appeals for a remand of the case in order that the district court may grant such motion.' " *Winchester,* 68 F.3d at 949 (quoting *Ferrell v. Trailmobile, Inc.,* 223 F.2d 697, 699 (5th Cir.1955)).

*Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004) (emphasis supplied). The proper procedure then is for the Court to "indicate that it will grant the motion", then Appellants will move the Fifth Circuit for a remand. *See* F.R.A.P. 12.1 ("Remand After an Indicative Ruling by the District Court on a Motion for Relief That is Barred By a Pending Appeal").

In its *Motion to Stay Appeal*, Appellants sought and received permission from the Fifth Circuit to have this Court rule on the *Motion to Vacate*. The Fifth Circuit clearly intended this Court to consider the Rule 60(b) motion. Now that Judge Guidry recused himself, [Rec. Doc. 65], the merits of the Rule 60(b) motion must now be decided. The Fifth Circuit ruled as followed:

> IT IS ORDERED that Appellants' opposed motion to stay further proceedings in this court pending the district court's consideration of a motion to vacate the judgment and motion to disqualify Judge Greg Guidry is GRANTED.

*In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-30539 (5th Cir. 05/01/23) (emphasis supplied), attached as Exhibit 1.

The Fifth Circuit stayed the appeal to allow this Court to rule on the *Motion to Vacate* and the *Motion to Disqualify*. The Fifth Circuit's order is clear. Both the *Motion to Vacate* and the *Motion to Disqualify* were attached as exhibits to Appellants' *Motion to Stay*. *See Motion to Stay*

*Appeal*, attached as Exhibit 2.  The Fifth Circuit reviewed both motions before issuing its order for this Court to review them.

The Archdiocese's second procedural argument, that Rule 60(b) does not apply to this Court, is waived.  The Archdiocese failed to argue to the Fifth Circuit that the *Motion to Stay* should be denied because Appellants were not procedurally allowed to proceed before the District Court pursuant to Rule 60(b) or that the motion was otherwise untimely.  *See Archdiocese Opposition to Motion to Stay*, attached as Exhibit 3.  The only argument that the Archdiocese made was that the Fifth Circuit could itself review the standing issue *de novo*.  The Archdiocese did <u>not</u> argue that Bankruptcy Rule 8022 applies.  The Archdiocese did <u>not</u> argue under any rule that Appellants filed the *Motion to Vacate* too late.

The Archdiocese argues that Bankruptcy Rule 8022 should apply but then concedes in a footnote:  "<u>Bankruptcy Rule 9024 provides that Federal Rule 60 applies in bankruptcy cases</u>".  *Opposition*, at 8 n.3 (emphasis supplied).  Nor does the Archdiocese cite to any case for the proposition that Bankruptcy Rule 8022 applies to vacating a district court judgment based on a district court judge's recusal.[1]

Courts have recognized that Rule 60(b) bases for relief applies in the bankruptcy context as well as the orders issued by district courts in bankruptcy cases.  *See, e.g., In re Curran*, 595 B.R. 272, 274 (B.A.P. 8th Cir. 2019); *Davis v. Fortune Inv. Enterprises*, No. 3:20CV78, 2020 WL

---

[1] The only case that the Archdiocese relied upon was *Butler v. Merchants Bank & Tr. Co.*, 2 F.3d 154, 155 (5th Cir. 1993), which is distinguishable since it pertained to whether the deadline to file from F.R.C.P Rule 59(e) or Bankruptcy Rule 8015 applied to a bankruptcy appeal from the district court to the appellate court.  While the Court did state that the deadline from the Bankruptcy rule applied, the Fifth Circuit was not reviewing the appeal from a motion to vacate the entire judgment based on judicial qualification after the Fifth Circuit had remanded for review.  The *Butler* Court also did not address the Fifth Circuit's ability to extend the deadline for review of such an exceptional circumstance.

3052862, at *2 (E.D. Va. June 8, 2020), aff'd, 831 F. App'x 670 (4th Cir. 2020) ("Because Rule 8022 does not state the specific standard for granting a motion for rehearing, the Court finds it appropriate to apply the standards for reconsideration used in Federal Rules of Civil Procedure 59(e), 60(b), and 60(d).").

Nonetheless, even if this Court decided to proceed pursuant to Bankruptcy Rule 8022, the Fifth Circuit's Order staying the appeal until resolution of the Rule 60(b) motion qualifies as an "order" extending the timeframe: "Unless the time is shortened or extended by order or local rule, any motion for rehearing by the district court or BAP must be filed within 14 days after entry of judgment on appeal." Fed. R. Bankr. P. 8022 (emphasis supplied).

Fairness also dictates that this Court address the merits of the Rule 60(b) motion. At bottom, the Archdiocese's argument is one of timeliness. There was simply no way to know that Judge Guidry was going to recuse himself many months after dismissing the appeal or that the bases for recusal pre-dated this case. Appellants filed their Motion to Vacate within two days of learning about it. Bankruptcy Rule 8022's 14 day deadline is simply ineffectual to remedy that injustice which prompted the Fifth Circuit to stay the appeal and allow their Motion to Vacate to proceed on the merits.

## II.   The Archdiocese's Merits Arguments Fail in the Face of Judge Guidry's Recusal.   .

In its Opposition, the Archdiocese raises two arguments addressing the merits of Appellants' Motion to Vacate. *Opposition*, at 9-16. First, the Archdiocese argues that Appellants' motion is based upon "speculation and hearsay" because it relied upon Judge Guidry's statements during two status conferences and a number of newspaper articles. *Id.* at 9-10. Second, the Archdiocese argues that Judge Guidry's failure to timely recuse himself was "harmless error"

because Appellants lack standing and that it would need to expend more time and expense if the *Motion to Vacate* is granted. *Id.* at 10-16.

The Archdiocese's first merits argument, that Appellants rely upon "speculation and inadmissible hearsay", does not make much sense anymore, since Judge Guidry has in fact recused himself after Appellants filed their *Motion to Disqualify*.[2]  In his recusal order, Judge Guidry did not address the reasons outlined in Appellants' *Motion to Disqualify*, instead stating as follows: "The undersigned United States District Judge recuses himself from further participation in this case pursuant to 28 U.S.C. § 455(a)." *Order*, at 1 (05/02/23) [Rec. Doc. 62].

Judge Guidry's refusal to specify the factual bases for his recusal can be seen by the general public as less than forthcoming.  This is especially true since local, national, and global news outlets have included some specific reporting about his ties to the Archdiocese.  During his second status conference, Judge Guidry even proclaimed to the parties that he was not recusing himself in the companion case, had received formal and informal opinions not to recuse himself, and then inexplicably reversed course a week later by recusing himself without explanation.

The Archdiocese's first merits argument attacking these facts as "speculation and hearsay" ignores that Judge Guidry has now in fact recused himself <u>in this case</u> without addressing Appellants' *Motion to Disqualify*, without a status conference, and without revealing a factual bases for the recusal.  Whatever uncertainty Judge Guidry has left as a result of his recusal is compelling, unsettling, and overshadows all of his rulings.  "Speculation and hearsay" fail to

---

[2] The Archdiocese's first argument is also disingenuous.  Taking Judge Guidry's reasons expressed during the two status conferences (albeit vague) as true, then his recusal was based on his close financial, professional, and personal ties with the Archdiocese and its Apostolates.  The Archdiocese has always known about his connectivity with them.  The Archdiocese should have records of how much Judge Guidry contributed to them, when the payments were made, and his years of service on the fundraising arm of the Archdiocese.  The Archdiocese's refusal to identify its connectivity with Judge Guidry feeds the growing public narrative that survivors who suffered sexual abuse at the hands of the Archdiocese and its clergy are incapable of receiving fair treatment in this Court (which is one of the factors in *Liljeberg*).

adequately capture the truly remarkable context of where Appellants find themselves – all the while the only party that actually knows the depth and breadth of the Archdiocese's relationship with Judge Guidry (the Archdiocese itself) does not seem inclined to disclose it.

The Archdiocese's second merits argument fails legally and factually.  The Archdiocese's argument fails underlinelegally because it applies harmless error analysis to the application of the three *Liljeberg* factors.  However, the harmless error analysis is reserved for an appellate court seeking review of a district court's decision.  Because the *Motion to Vacate* seeks a district court judge to vacate the judgment of another district court judge who recused himself, this Court is required to analyze and weigh the *Liljeberg* factors as a matter of first impression.  Should the aggrieved party of this Court's ruling seek appellate review of its decision on the *Motion to Vacate*, then the Fifth Circuit will review this Court's analysis of the *Liljeberg* factors through the standard of "harmless error".  All of the cases relied upon by the Archdiocese in its *Opposition* support this manner of review.[3]  *See, e.g., Patterson v. Mobile Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003) (applying harmless error review to the district court's denial of a motion for summary judgment); *Roberts v. Walmart La., LLC,* 54 F.4th 852, 854 (5th Cir. 2022) (affirming denial by a district court of a Rule 60(b) motion).

The Archdiocese's argument fails underlinefactually because its articulation of the three *Liljeberg* factors ignores the risk of injustice to Appellants, omits its litigation in the companion appeal, and improperly elevates its own economic interests above Appellants' interest in having an impartial judge review the sanctions levied against them.  The Archdiocese also continues to fail to understand the deeply personal importance that these survivors of childhood sexual abuse feel

---

[3] Harmless error appellate review also typically applies in situations where the district court denied a motion to recuse and ruled on another matter anyway.  In this case, Judge Guidry has already recused himself, so the proper analysis is a first review of the *Liljeberg* factors.

about representing others like them.

Under the first *Liljeberg* factor, risk of injustice to the parties, the Archdiocese only argues that Judge Guidry's ruling on standing was legally correct and, as a result, there can be no "risk of injustice" to the parties. The Archdiocese then comments that it would cost money and time if the motion was granted. Nowhere does the Archdiocese identify what "risk of injustice" means to the Appellants.

The Archdiocese fails to acknowledge that Appellants reject Judge Guidry's ruling on standing, and that the Fifth Circuit has continued the Archdiocese's *Motion to Dismiss Appeal* based on standing to be carried with the case. *See 10/18/2022 Order*, attached as Exhibit 4. Judge Guidry's ruling was legally incorrect when it was first issued and remains legally flawed. Appellants welcome the opportunity to engage in full briefing of the merits on standing after the *Motion to Vacate* is granted. Such a decision would be free of the current ruling's perception of impropriety.

In fact, Judge Guidry's ruling on standing in this case was the exact opposite ruling on standing in the companion case. In this case, Judge Guidry ruled that Appellants lacked standing to challenge the June 7, 2022 Order because it did <u>not</u> act as a sanction. [Rec. Doc. 38] However, in the companion case, Judge Guidry ruled that Appellants' attorney Richard Trahant had standing to challenge the June 7, 2022 Order because it <u>did</u> act as a sanction. *In re Roman Catholic Church for the Archdiocese of New Orleans*, No. 22-1740 (08/23/22) [Rec. Doc. 32]. This contradiction requires a full *de novo* review by this Court after the *Motion to Vacate* is granted.[4]

---

[4] In its *Opposition*, the Archdiocese repeatedly insists that the motion should be denied because the Fifth Circuit will conduct a *de novo* review. However, the Fifth Circuit could have decided that for itself and denied Appellants' *Motion to Stay Appeal*. Instead, the Fifth Circuit stayed the appeal to allow this Court to make its own ruling on the merits.

The Archdiocese's money-and-time argument is self-serving. Had it cared about time and money, the Archdiocese would have notified the parties and reminded Judge Guidry about the financial, professional, and personal ties it shares with Judge Guidry when he was first assigned to the bankruptcy appeals. Instead, the Archdiocese presumably engaged in its own cost-benefit-analysis that its ties with Judge Guidry were some sort of litigation benefit that outweighed the risk that all of Judge Guidry's rulings in these bankruptcy appeals would need to be revisited once it was discovered. The Archdiocese consciously decided not to tell Appellants, not to tell the class of almost 500 sexual abuse survivors who filed claims into the bankruptcy, or otherwise publicly disclose them. According to his statements in the status conferences, Judge Guidry's reasons for recusal existed when he was first assigned to these cases in 2021. The Archdiocese does not get to make the money-and-time argument because it could have avoided all of this had it done the right thing and informed the parties and the Court of Judge Guidry's relationship with them in the beginning.

The "risk of injustice" to Appellants is substantial. Appellants were unceremoniously removed from the Unsecured Creditors Committee after serving for two years, spending countless hours attending weekly meetings and calls, reviewing documents, and learning the bankruptcy process – all the while amassing significant institutional knowledge. The Bankruptcy Court removed them without a hearing, without notice, and without any interested party requesting it. The Bankruptcy Court based its draconian relief on a sealed U.S. Trustee Report and statements that Appellants have never seen and based on a federal investigation that the Bankruptcy Court ruled the Appellants were not allowed to participate in. All of this, so that a district court judge with ties to the Archdiocese can dismiss their appeal without addressing the merits and without

allowing them access to the sealed Report or statements to defend themselves.  Appellants have never been more at "risk of injustice".

As for the second *Liljeberg* factor, risk of injustice in other cases, the Archdiocese dismissively argues that there will be "no risk of injustice in other cases".  *Opposition*, at 14.  The Archdiocese failed to disclose the companion case, No. 22-1740, which also challenges the June 7, 2022 Order and is also pending before this Court.  The companion case creates a risk of inconsistent rulings where relief could be granted in one case but not the other – where the sanctions against some Appellants may be affirmed and sanctions against others reversed even though they all arise from the same June 7, 2022 order.

There is also risk of injustice to the bankruptcy itself.  The four Appellants faithfully and diligently served the class of almost 500 sexual abuse survivors on the Unsecured Creditor's Committee for two years.  They brought their own experiences to the benefit of the entire class. Appellant James Adams served as the chairperson of the committee.  Appellants James Adams and Jackie Berthelot even testified in the Louisiana legislature to help change the prescriptive period to allow survivors to bring claims for being sexual abused as children.  The Committee and the class will be better served and more likely to "avoid injustice", if they return.

As for the third *Liljeberg* factor, the risk of undermining the public's confidence in the judicial process, the Archdiocese argued that since Judge Guidry has already recused himself from this case the public should be appropriately satiated.  *Opposition*, at 15.  The Archdiocese failed to identify the newspaper articles covering Judge Guidry's recusal, the articles concerning the Archdiocese bankruptcy generally, or any public evidence of concern.

The local and national public is focused on the Archdiocese of New Orleans bankruptcy and these appeals.  The presence of the Archdiocese, a central cultural fixture in this city for 300

years, seeking bankruptcy protection in federal court fascinates the community.  The revelation that the Archdiocese enabled generations of sexual abuse of minors sickens most of the community.  As a result, unlike most cases, the local and national communities are watching to see how the federal judiciary treats the Archdiocese as compared to how the judiciary treats the Archdiocese's victims.

The news stories about Judge Guidry's recusal from the Archdiocese cases and the Bankruptcy Court sanctioning one of Appellants' lawyers $400,000 for trying to protect children at a local high school encapsulates public interest.  Played against the backdrop that most of the judges on the New Orleans federal bench recused themselves from these cases due to their financial, professional, and personal ties with the Archdiocese is remarkable.

Counter to the Archdiocese's argument, Judge Guidry's recusal sparked intense public interest.  Over 700 media outlets shared just the two primary articles authored by the Associated Press.  *See Judge in Catholic Bankruptcy Recuses Over Church Donations*, attached as Exhibit 5; *Judge Stays on Catholic Bankruptcy Despite Church Ties*, attached as Exhibit 6.  On Twitter, the articles were viewed more than 175,000 times, with thousands of likes and retweets.  *See Twitter Summary*, attached as Exhibit 7.  By any metric, the public interest in Judge Guidry's recusal and these appeals is beyond speculation.  If the comments to these articles are any indication of "the public's confidence in the judicial process", then the lack of the public's confidence in these bankruptcy appeals has reached critical mass.

## CONCLUSION

For all of the aforementioned argument, law, and facts, Appellants respectfully request that this Court vacate the Judgment dismissing the case.

10

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for James Adams, Jackie Berthelot, Theodore Jackson, and Eric Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on this 19th day of May, 2023.

S/Soren E. Gisleson