UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE ROMAN CATHOLIC
CHURCH OF THE ARCHDIOCESE
OF NEW ORLEANS

CIVIL ACTION

NO. 22-1738

SECTION M (3)

### OPINION

Before the Court is a motion filed by appellants James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson (collectively, "Appellants") to vacate the August 11, 2022 order and its corresponding judgment dismissing their appeal.[1]  Appellee the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") responds in opposition,[2] and Appellants reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies Appellants' motion.

## I.  BACKGROUND

This matter concerns an appeal of a bankruptcy court order that removed Appellants from the Official Committee of Unsecured Creditors (the "Committee") in order to preserve the Committee's ability to handle sensitive and confidential documents and information (dealing with allegations of sexual abuse by clergy and laypersons against minors) produced in the bankruptcy

---

[1] R. Doc. 57 (citing R. Docs. 38; 39).  Appellants also filed a motion to access sealed records seeking to view a report issued by the United States Trustee on June 3, 2022 (R. Doc. 65).  The Archdiocese responds in opposition (R. Doc. 67), and Appellants reply in further support of their motion (R. Doc. 71).  The documents Appellants seek to review may be relevant to the substantive issues raised in their appeal (*e.g.,* whether the bankruptcy court had authority to remove them from the Committee), but they do not bear upon the issues presently before this Court – namely, whether Judge Guidry's order dismissing the appeal for lack of standing (a procedural ruling) should be vacated in the wake of his recusal.  Because the documents are not pertinent at this time, Appellants' motion for access to sealed records is DENIED.  This ruling is not intended to prejudice Appellants' ability to pursue access to the documents at a later date, if and when, either this Court or the Fifth Circuit is called upon to consider the merits of their appeal.
[2] R. Doc. 66.
[3] R. Doc. 73.

case, while simultaneously preserving their attorney-client relationships with their counsel of choice, Richard Trahant, after Trahant admitted to violating the bankruptcy court's protective order by disclosing certain of the confidential information to third parties. The facts pertinent to this appeal begin with the United States Trustee (the "Trustee") appointing the Committee for the Archdiocese's bankruptcy case.[4] At the time of the events underlying this appeal, the Committee was comprised of six of the more than 450 abuse claimants, including the four Appellants.[5] The Committee, as a single unit and with the bankruptcy court's approval, is represented by the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP.[6] However, individual Committee members retained their respective state-court counsel to advise them on their individual claims against the Archdiocese and its bankruptcy estate and to assist them in fulfilling their duties as Committee members.[7] Trahant represented the four Appellants in this capacity.[8]

The Archdiocese's bankruptcy case is governed by a protective order that allows parties to mark documents produced in discovery responses as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY."[9] The producing party may designate a document as "CONFIDENTIAL" when it contains "Confidential Information," meaning "any non-public information provided by a [p]arty wherein such information is not public or available to the general public."[10] "The [p]arty requesting the material shall be responsible for safeguarding all produced materials and information designated as 'CONFIDENTIAL' in accordance with the provisions of

---

[4] For a more complete explanation of the Committee's role in a bankruptcy case and a narrative of the facts, see Civil Action No. 22-4101, R. Doc. 1-2 at 1-22. The Trustee originally appointed the Committee on May 20, 2020, and reconstituted it twice – first on June 10, 2020, then again on October 8, 2020. *Id.*

[5] *Id.* at 6. Although not strictly relevant to the present appeal, the Court notes that, on March 5, 2021, the Trustee, pursuant to an order of the bankruptcy court, appointed a separate official committee comprised of unsecured *commercial* creditors. *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 7; Civil Action No. 22-1740, R. Doc. 33-2 at 25.

[10] No. 22-1740, R. Doc. 33-2 at 26.

this Protective Order."[11]   Paragraph 7 of the protective order limits the disclosure or dissemination of any discovery material marked "CONFIDENTIAL" (also known as "protected material") to purposes related to the bankruptcy case or related proceedings and, even then, only to certain persons or entities, including the Trustee, the Archdiocese as debtor (its officers, employees, and agents), the Committee (its members and their attorneys), and other creditors and bankruptcy-case constituents, after they sign a confidentiality statement.[12]   Paragraph 10 makes it clear that any disclosure of protected material beyond the methods set out in the protective order is strictly prohibited.[13]   Trahant, as Appellants' personal attorney, read, signed, and was bound by the protective order, and so had access to confidential material.[14]

In December 2021, the Archdiocese produced to the Committee certain materials it designated as "CONFIDENTIAL," which included documents related to the Archdiocese's Internal Review Board's evaluation of decades-old abuse allegations against a specific priest who had not been included on the Archdiocese's previously published "Credibly Accused List" or named in a proof of claim filed in the bankruptcy case.[15]   Within days, Trahant disseminated certain of this information (the priest's name) to third parties, namely, his cousin (the principal of the high school where the priest was employed as chaplain) and a local journalist.[16]   When the Archdiocese learned that some unidentified person had misused protected material,[17] it filed a sealed motion

---

[11] *Id.*

[12] No. 22-4101, R. Doc. 1-2 at 7-8; No. 22-1740, R. Doc. 33-2 at 30-32.

[13] No. 22-1740, R. Doc. 33-2 at 36.

[14] No. 22-4101, R. Doc. 1-2 at 7-8; No. 22-1740, R. Doc. 33-2 at 23.

[15] No. 22-4101, R. Doc. 1-2 at 13.   In November 2018, the Archdiocese published the "Credibly Accused List," which names clergy who have been removed from the ministry due to allegations of sexually abusing a minor. *Id.*

[16] *Id.* at 14-15.

[17] The Archdiocese learned of the breach on January 18, 2022, when the journalist, who Trahant had previously emailed, published an article in an online newspaper naming the priest, disclosing details about the sexual abuse allegations against him, and disclosing information about the Archdiocese's Internal Review Board's investigation and disposition of the claims – none of which had been public before then. *Id.* at 4.

seeking to compel the Committee to investigate the source of the breach and asked the bankruptcy court to conduct an evidentiary hearing to consider imposing sanctions for the apparent violation of the protective order.[18]

After a series of status conferences and informal discovery between the Archdiocese and the Committee revealed that Trahant had contacted the high school principal regarding certain protected material, the bankruptcy court appointed the Trustee to perform an independent investigation into the wrongful disclosure of the protected material.[19]  The bankruptcy court "was concerned not only with enforcing its own Orders, but with the timing of such breach and the negative impact that violation would have on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in this case to proceed in good faith in the upcoming mediation of claims asserted against the estate."[20]  The Trustee's findings were due on or before June 3, 2022.[21]

On June 3, 2022, the Trustee filed its statement of position under seal,  attaching 78 sworn declarations, 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure, one transcript and one summary of two unsworn telephone interviews, and numerous documents produced to the Trustee in discovery, including telephone and text message logs, e-discovery transaction reports, and emails, letters, and text messages (collectively, the "Trustee's Report").[22]  In his Rule 2004 examination, Trahant testified that his law practice consists largely of litigating clergy sexual abuse claims.[23]  He admitted that, as counsel for four of

---

[18] *Id.* at 9-10.
[19] *Id.* at 10-12.  Specifically, in his declaration submitted by the Committee, Trahant admitted that on December 31, 2021, he first contacted his cousin, the high school principal, regarding protected material he received in his role as counsel for a Committee member.  *Id.* at 11; No. 22-4101, R. Doc. 2-11 at 330-33.
[20] No. 22-4101, R. Doc. 1-2 at 12.
[21] *Id.*; No. 22-1740, R. Doc. 33-2 at 345.
[22] No. 22-4101, R. Doc. 1-2 at 12-13.
[23] *Id.* at 14.

the Committee members, he read, and was bound by, the protective order and all of its amendments.[24]  Trahant stated that he first learned of the abuse allegations against the priest at issue on December 30 or 31, 2021, through his receipt of the discovery produced by the Archdiocese.[25]  Trahant recognized the priest's name and conducted an internet search to find his current residence and workplace.[26]  When the Trustee confronted Trahant with his sworn declaration and the December 31, 2021 text messages, Trahant admitted that he contacted his cousin, the high school principal, to inquire about the priest by name, knowing that his cousin would immediately infer that the priest had been accused of sexual abuse.[27]  Trahant stated that his purpose was to ensure that the priest would not return to work at the high school.[28]  Trahant also admitted to further text and telephone communications with his cousin through January 4, 2022, in which he revealed the nature of the allegations against the priest which he had only learned from the protected material received in discovery.[29]  In the deposition, the Trustee also confronted Trahant with his January 1, 2022 email to the journalist – the one with the subject line containing only the name of the priest, while the body of the email read: "Keep this guy on your radar.  He is currently the chaplain at [the high school]."[30] Trahant admitted that he knew the reporter would infer from the email that the priest had been accused of sexual abuse and then would write about it.[31]  Trahant was adamant in his deposition that he did not believe his actions violated the protective order, but he also testified contradictorily that he felt restricted by it.[32]  He admitted, however, that he did not move for relief from the protective order to report what he claims were

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at 14-15.
[29] *Id.* at 15.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 15-16.

potential crimes, nor did he use the protective order's mechanism for challenging the Archdiocese's "confidential" designation of the documents it produced.[33]

On June 7, 2022, after reviewing the Trustee's Report, the bankruptcy court issued an order (the "June 7, 2022 Order" on appeal in this civil action), finding that Trahant's own testimony, as well as certain documents attached to the Trustee's Report (including Trahant's own text messages), confirmed that he knowingly and willfully violated the protective order: "(i) Trahant had read and was bound by the Protective Order; (ii) knew that he was bound by the Protective Order; and (iii) beginning on December 31, 2021, provided on multiple occasions confidential information he received to a third party [his cousin, the principal] and the media in direct violation of the Court's Protective Order."[34]  The bankruptcy court noted that "[n]o dispute exists that the information that reached the media was information that could not have come from any other source but the [Archdiocese]'s production of discovery in this case."[35]  The bankruptcy court, expressly acknowledging its "duty to protect the integrity of the bankruptcy process and enforce its own Orders," found that "Trahant's willful breach of [the] Protective Order clearly disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation."[36]  This determination, however, presented a dilemma to the bankruptcy court: how could it permit the four Committee members who were Trahant's clients to keep him as their counsel (which the court recognized they had every right to do) and yet continue to participate in the Committee's work, which necessarily involved protecting the confidentiality of the sensitive information and documents they were called upon to receive and review?  Recognizing that it could not interfere in the attorney-client

---

[33] *Id.* at 16.
[34] R. Doc. 1-2 at 3.
[35] *Id.* at 3-4.
[36] *Id.* at 4.

relationship (meaning that the court had to assume, given "the dynamics present on the Committee," that the confidential information the Committee members received would be communicated to Trahant, who had already demonstrated a willingness to disclose such information despite the protective order), the bankruptcy court was "forced" to resolve the dilemma by imputing Trahant's "willful breach and disregard of [the] Protective Order" to his clients – that is to say, presuming that disclosure of confidential information to them, and consequently to Trahant, could result in further unauthorized disclosures to third parties – and finding cause to order the Trustee to remove them from the Committee "to prevent an abuse of process and to ensure adequate representation of creditors."[37]  The bankruptcy court explained that it was compelled to "act [in this way] to protect against disruption of the bankruptcy process, to guard the rights of all parties in interest, and, most immediately in light of the current posture of the case, to preserve the trust in the confidentiality of mediation."[38]  The bankruptcy court concluded the June 7, 2022 Order by stating that it "will issue a separate Order To Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of [the] Protective Order."[39]

Although the bankruptcy court's June 7, 2022 Order was an interlocutory order that did not itself impose sanctions on anyone, Appellants appealed without seeking leave of court.[40]  The

---

[37] *Id.* at 4-5.  *See* 7 COLLIER ON BANKRUPTCY ¶ 1102.07[1], at 1102-31 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[U]nder section 105(a) the court has the power to disband a committee in appropriate circumstances because the Code does not explicitly prohibit the court from doing so.").

[38] R. Doc. 1-2 at 4.  A mediation was scheduled to begin the next day.

[39] *Id.* at 5.

[40] R. Docs. 1; 38 at 4.  Trahant also appealed the bankruptcy court's June 7, 2022 Order without seeking leave to file an interlocutory appeal.  *See* No. 22-1740, R. Doc. 1.  On June 13, 2022, the bankruptcy court issued an order for Trahant to appear on July 25, 2022, to show cause why he should not be sanctioned pursuant to 11 U.S.C. § 105(a) for his knowing and willful violation of the protective order.  No. 22-1740, R. Doc. 33-2 at 1-2.  This was the order to set a contempt hearing that was promised in the court's April 25, 2022 order and its June 7 2022 Order.  The show-cause/contempt hearing was held on August 22, 2022, after it had been continued from the original July 25, 2022 date due to counsel's scheduling conflict.  No. 22-4101, R. Doc. 1-2 at 18.  Trahant testified at the hearing that he obtained confidential information regarding the priest solely from the protected material he received as counsel for the individual Committee members.  *Id.* at 20.  He also testified that he knew he was bound by the protective order,

appeal was allotted to Judge Greg Guidry.  In the meantime, the Trustee appointed three new people to serve on the Committee, which is made up entirely of abuse claimants, bringing its membership total to five.[41]  The Archdiocese filed a motion to dismiss the appeal,[42] arguing that (1) Appellants lacked standing to bring the appeal because they cannot show how the bankruptcy court's June 7, 2022 Order "financially harmed them," including how it "impaired their status as creditors or affected their unsecured claims";[43] and (2) Appellants cannot identify any "exceptional circumstances," so the district court lacked jurisdiction to consider the interlocutory appeal.[44] Appellants opposed the motion, arguing that, because they were "severely sanctioned" when they were removed from the Committee, and because "a sanction order by its very nature confers standing on the subject of the sanctions," the "aggrieved party" standard permitting appeal was satisfied and the June 7, 2022 Order was thus final and appealable.[45]  On August 11, 2022, Judge Guidry entered an order granting the Archdiocese's motion to dismiss the appeal, holding that Appellants lacked standing to pursue the appeal because they identified no direct and adverse impact on their pecuniary interests flowing from the bankruptcy court's order to remove them from the Committee.[46]  As Judge Guidry explained, because Appellants did not have a general right to

---

but nonetheless knowingly disseminated to third parties information found in the protected material, assuming that they would use and publish the information. *Id.* at 20-22.  On October 11, 2022, the bankruptcy court issued its memorandum opinion and order imposing $400,000 in sanctions against Trahant pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure and § 105(a) for his knowing and willful breach of the protective order. *Id.* at 1-30. The bankruptcy court emphasized that Trahant, as a seasoned attorney and officer of the court, has a responsibility to obey court orders, "even those he may disagree with and those that become inconvenient to him," which was heightened by the position of trust he held as counsel to the Committee members who were, in turn, entrusted with the duty to hold sensitive and non-public information in confidence. *Id.* at 27.  The court imposed sanctions "not only to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders [including, particularly, its protective order], but also to preserve the integrity of the bankruptcy process and protect it from abuse." *Id.* at 27-29.  Trahant appealed the bankruptcy court's October 11, 2022 order. *See* No. 22-4101, R. Doc. 1.  That appeal was consolidated with his earlier appeal of the June 7, 2022 Order.  No. 22-4101, R. Doc. 4.
 [41] R. Doc. 1-1 at 5.
 [42] R. Doc. 25.
 [43] *Id.* at 6-7.
 [44] *Id.* at 8-14.  Nor did Appellants seek leave to appeal the interlocutory order.
 [45] R. Doc. 29.
 [46] R. Doc. 38.

serve on the Committee, their removal from the Committee did not rise to the level of a sanction.[47]

After all, reasoned Judge Guidry, "the former members' interest and claims are still represented

by a five-member Unsecured Creditor's Committee."[48]  Appellants then filed a notice of appeal to

the Fifth Circuit seeking substantive review of the merits of the bankruptcy court's June 7, 2022

Order as well as review of the district court's dismissal of the appeal on procedural grounds.[49]

On April 28, 2023, Judge Guidry entered an order of recusal in Trahant's consolidated

appeals of the bankruptcy court's June 7, 2022 and October 11, 2022 orders.[50]  The recusal came

after Judge Guidry had informed the parties in those cases that the Committee on the Codes of

Judicial Conduct had opined that recusal was not mandatory in light of his prior donations to, and

service on the board of, Catholic charitable organizations that were not parties to the Archdiocese's

bankruptcy case.[51]  It also came after the publication of news articles concerning Judge Guidry's

support of Catholic charities.[52]

On April 30, 2023, Appellants filed the instant motion to vacate Judge Guidry's August

11, 2022 order and corresponding judgment, along with a motion to disqualify Judge Guidry.[53]  At

the same time, Appellants filed in the Fifth Circuit a motion to stay the appeal and cancel oral

argument so that the district court could consider the motions to vacate and disqualify.[54]  On May

1, 2023, the Fifth Circuit granted the Appellants' motion to stay the appeal and cancel oral

argument "pending the district court's consideration of a motion to vacate the judgment and motion

to disqualify Judge Greg Guidry."[55]  On May 2, 2023, Judge Guidry recused himself from this

---

[47] *Id.* at 4-5.
[48] *Id.* at 5.
[49] R. Doc. 40.
[50] No. 22-1740, R. Doc. 99.
[51] No. 22-1740, R. Docs. 94; 96; 97; 98.
[52] R. Doc. 57-1 at 8.
[53] R. Docs. 57; 59.
[54] Fifth Circuit, Case No. 22-30539, R. Doc. 97.
[55] Fifth Circuit, Case No. 22-30539, R. Doc. 102-2.

case pursuant to 28 U.S.C. § 455(a), thus rendering moot the motion to disqualify.[56]  This appeal was then reallotted to this section of court as related to the other appeals pertaining to the Archdiocese's bankruptcy case which had already been reallotted to this section.

## II.   PENDING MOTION

Appellants argue that Judge Guidry's order dismissing the appeal must be vacated pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure because he should have recused himself under 28 U.S.C. § 455(a) and (b).[57]  They argue that the factors set forth by the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), for considering such motions favor vacatur.[58]  First, Appellants argue that there is a risk that denial of relief (specifically, a failure to vacate the order and judgment of a judge who should have recused) will produce injustice to the parties in this case because this Court will vacate the judgment in Trahant's consolidated appeals given Judge Guidry's recusal in those appeals.[59]  Appellants further argue that, once both judgments are vacated, they can file a motion to consolidate their appeal with Trahant's to promote judicial efficiency and fairness.[60]  Second, Appellants argue that there is a risk that denial of relief will produce injustice in other cases because Trahant's appeals present many of the same issues, meaning that there is a risk of inconsistent results since Appellants assume that this Court will revisit all of Judge Guidry's orders in Trahant's appeals, which could result in its setting aside the bankruptcy court's June 7, 2022 Order as to Trahant but not them.[61]  Third, Appellants argue that the denial of relief risks undermining the public's confidence in the judicial process because of the "extensive" press coverage of these appeals and this district's supposed close ties to the

---

[56] R. Doc. 62.
[57] R. Doc. 57-1 at 9-12.
[58] *Id.*
[59] *Id.* at 10-11.
[60] *Id.* at 11.
[61] *Id.*

Archdiocese which prevents Appellants and other abuse victims from finding a fair forum in federal court.[62]

In opposition, the Archdiocese argues that Appellants' motion is procedurally deficient because it should have been made under Rule 8002 of the Federal Rules of Bankruptcy Procedure (which requires that a motion for rehearing be filed within 14 days after entry of the judgment on appeal), not under Rule 60(b), and thus was untimely since it was filed on April 30, 2023, almost nine months after Judge Guidry's August 11, 2022 order and judgment.[63]   As to the *Liljeberg* factors, the Archdiocese argues that Judge Guidry's failure to recuse sooner was harmless error.[64] First, the Archdiocese argues that the denial of vacatur does not present a risk of injustice to the parties in this proceeding because the Fifth Circuit will perform a *de novo* review of the bankruptcy court's June 7, 2022 Order and Judge Guidry's dismissal of the appeal for lack of standing.[65] Second, the Archdiocese argues that denying relief does not risk injustice in other cases because the standing issue is unique to this appeal and not present in Trahant's appeals.[66]   The Archdiocese also argues that vacating Judge Guidry's order will harm other parties in the bankruptcy proceeding because attention will be diverted from the reorganization and adjudication of the claims in bankruptcy.[67]   Third, the Archdiocese argues that denial of relief does not pose a risk of undermining the public's confidence in the judicial process because an independent judge is considering the vacatur issue.[68]

---

[62] *Id.* at 11-12.
[63] R. Doc. 66 at 6-9.
[64] *Id.* at 10-17.
[65] *Id.* at 11-14.
[66] *Id.* at 14.
[67] *Id.* at 14-15.
[68] *Id.* at 15-16.

Appellants reply, arguing that this Court must have jurisdiction to review the motion under Rule 60(b)(6) or else the Fifth Circuit's stay order is nonsensical.[69]  They also argue that fairness dictates that the merits of their motion to vacate should be considered because there was no way for them to know, at the time of the August 11, 2022 order, that Judge Guidry was going to recuse himself months after dismissing their appeal.[70]  Appellants next argue that the harmless error standard does not apply because "it is reserved for an appellate court seeking review of a district court's decision."[71]  As to the three *Liljeberg* factors, Appellants largely reiterate the positions they advanced in their original motion,[72] adding only that there is a risk of injustice to them because they should be able to present the merits of their appeal to a different, independent judge so that there is no "perception of impropriety."[73]

## III.   LAW & ANALYSIS

### A.  An Overview of the Bankruptcy Court's Stepped Response to the Violation

A correct disposition of the Appellants' motion to vacate Judge Guidry's August 11, 2022 order and judgment follows from a correct understanding of the process the bankruptcy court pursued in issuing the June 7, 2022 Order and its subsequent order imposing sanctions against Trahant.  This process consisted of what were two phases – essentially two separate proceedings – instituted to address issues arising out of the unauthorized disclosure of confidential information which was suspected to be a violation of the bankruptcy court's protective order.

The first phase or proceeding was initiated in response to the January 18, 2022 publication of the protected information and the ensuing motion to compel.  That proceeding involved an

---

[69] R. Doc. 73 at 1-4.
[70] *Id.* at 4.
[71] *Id.* at 6.
[72] *Id.* at 6-10.
[73] *Id.* at 6-9.

investigation into the suspected violation and the bankruptcy court's enforcement of its protective

order through the issuance of the June 7, 2022 Order.  Based on the investigation and the evidence

it generated, the bankruptcy court applied a lesser evidentiary standard (likely, a preponderance

standard) to make findings that a violation had indeed occurred and the court acted to enforce its

protective order and to prevent further abuse of the judicial process (namely, any additional

unauthorized disclosure of confidential information) by removing Trahant from any role in the

Committee's receipt and handling of confidential information and documents.  This could only be

accomplished by having the individual Committee members who were Trahant's clients

(Appellants) removed from the Committee since the bankruptcy court could not (and would not)

interfere with their choice of Trahant as their attorney.  At bottom, then, the first phase was limited

to investigation into the suspected protective order violation and the court's enforcement of its

order.[74]

The second phase was the contempt proceeding initiated by the bankruptcy court's June

13, 2022 show-cause order.  That order advised Trahant of the accusation against him and that

sanctions were being considered, and it set a hearing at which Trahant would be allowed to present

evidence to disprove the accusation and the reasonableness of any sanctions, which would be

considered under an evidentiary standard of clear and convincing.  Based on the evidence

presented to the bankruptcy court in submissions before the hearing and in testimony at the hearing,

the court issued its October 11, 2022 order, confirming under the more rigorous clear-and-

convincing standard that Trahant had violated the protective order by disclosing protected material

---

[74] This was undoubtedly how the bankruptcy court viewed its own approach to these proceedings – that is, as a stepped process – as reflected in the court's statement at the beginning of the show-cause/contempt hearing: "[W]e're here today on an order to show cause.  The Court issued it after … I had read the independent report of the United States Trustee.  I made some decisions, issued a couple of orders, and then issued this order to show cause.  Of course, *no sanctions have been awarded yet*."  No. 22-4101, R. Doc. 2-11 at 99-89 (emphasis added).

to his cousin and the journalist and finding that Trahant acted in contempt of court in doing so. Consequently, the court also examined, again under the clear-and-convincing evidentiary standard, the evidence concerning the quantum of the fees and costs to be imposed as sanctions.  In this light, as is proper for a contempt matter, this second proceeding was the only phase involving the imposition of sanctions.

With this overview in mind, the Court now examines the issues posed by Appellants' motion to vacate.

**B.  Bankruptcy Appellate Jurisdiction**

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees … and with leave of the court, from … interlocutory orders and decrees" of bankruptcy courts.  28 U.S.C. § 158(a)(1), (3).  This appellate process functions "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts."  *Id.* § 158(c)(2). The district court, sitting in its appellate capacity, reviews the bankruptcy court's conclusions of law and mixed questions of law and fact *de novo* and findings of fact for clear error.  *In re Texxon Petrochems., L.L.C.*, 67 F.4th 259, 262 (5th Cir. 2023).  The court of appeals applies the same standard when reviewing the district court's decision on second review of a bankruptcy court order. *Id.*

The Federal Rules of Bankruptcy Procedure, not the Federal Rules of Appellate Procedure, govern the procedures and time limits of appeals from the bankruptcy court to the district court. Fed. R. Bankr. P. 8001(a).  Those rules do not recognize Rule 60(b) motions made under the Federal Rules of Civil Procedure insofar as such motions seek to have a district court reexamine its decisions issued as an appellate court in bankruptcy.[75]  *See In re Bli Farms, P'ship*, 465 F.3d

---

[75] Bankruptcy Rule 9024 provides that Rule 60 does apply to bankruptcy cases but is understood to apply to the judgments and orders of the bankruptcy court as a trial court, not those of a district court exercising appellate

654, 657 (6th Cir. 2006) (holding "that the district court lacked jurisdiction to entertain the Rule 60(b) motion because such a motion is a nullity when it seeks review of the order of a district court sitting as an appellate court in bankruptcy proceedings"); *In re Vaughn Co.*, 2018 WL 1183363, at *1 (D.N.M. Mar. 6, 2018) (denying Rule 60(b) motion, after observing that part VIII of the Bankruptcy Rules, not the Federal Rules of Civil Procedure, governs appeals of bankruptcy court decisions to a district court); *In re President Casinos, Inc.*, 2010 WL 2342491, at *1 (E.D. Mo. June 7, 2010) (holding that Rules 59(e) and 60(b) are not the proper ways to seek review of a district court's order affirming the bankruptcy court).

Instead, Bankruptcy Rule 8022 (formerly Bankruptcy Rule 8015) "'provides the sole mechanism for filing a motion for rehearing'" from a final order of the district court sitting in its appellate capacity.  *In re Bli Farms*, 465 F.3d at 657 (quoting *In re Butler*, 2 F.3d 154, 155 (5th Cir. 1993)); *see also Gober v. Gober & Merrell Chevrolet-Buick-GMC, Inc.*, 2019 WL 13210650, at *1 (E.D. Tex. Feb. 20, 2019); *Reynolds v. Md. Dep't of Labor, Licensing & Regul.*, 2018 WL 5045192, at *1 (D. Md. Oct. 16, 2018).  Bankruptcy Rule 8022 provides that "[u]nless the time is shortened or extended by order or local rule, any motion for rehearing by the district court … must be filed within 14 days after the entry of judgment on appeal."  Fed. R. Bankr. P. 8022(a)(1).

Appellants filed their motion to vacate long after the 14-day time limit had expired.  Thus, their motion could be denied on procedural grounds given the long line of authority holding that Rule 8022, not Rule 60(b), controls.  Even under Rule 60(b), Appellants are compelled to rely upon subparagraph (6), which allows such motions after the otherwise applicable one-year time limit, upon a showing of "extraordinary circumstances."  In essence, Appellants urge that, because

---

jurisdiction in a bankruptcy case.  *See, e.g., In re W.R. Grace & Co.*, 476 B.R. 114, 120 (D. Del. July 23, 2012) (observing that Rule 60(b) "is generally inapplicable in appellate bankruptcy proceedings" but "applies to judgments or orders *of the bankruptcy court*, and *not* to judgments or orders of a district court exercising appellate jurisdiction in a bankruptcy case") (emphasis in original).

they could not have known within the 14-day period under Rule 8022 that Judge Guidry would recuse himself months after his August 11, 2022 order and judgment dismissing the appeal, "extraordinary circumstances" exist to look beyond Rule 8022 to permit a Rule 60(b) motion at this time and at this juncture of the appeal.  A leading treatise suggests that there may some slight support for an appellate court to consider Rule 60 motions in certain instances, observing: "The rule applies of its own force only to the district courts but the courts of appeals frequently look to Rule 60, as they do to other rules, for guidance in cases pending before them."  11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2851, at 291 (3d ed. 2023) (citing, *inter alia*, *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 296 F.2d 215 (5th Cir. 1961) (holding that appellate court had jurisdiction to consider Rule 60-like motion for correction of a clerical mistake usually made to a district court)).

On balance, then, while the Archdiocese's argument (*viz.,* that Appellants' motion to vacate is untimely) is not without significant weight under the case law, this Court finds that it would be inequitable to employ a procedural bar to the motion given the posture of the case and the fact that Appellants could not possibly have brought the motion to vacate, on the basis advanced, within the 14-day time limit of Rule 8022 because the basis did not exist when the order dismissing the appeal was handed down.  This case thus presents a unique situation concerning the recusal of an appellate judge (a district court sitting in its appellate capacity), not the trial judge (which is the usual context), months after that appellate judge had issued the order and judgment sought to be vacated.  These circumstances are so extraordinary as to constitute an equitable exception from the hard rule of the *Butler*/*Bli Farms* line of cases.  Accordingly, this Court will consider the merits of Appellants' motion to vacate.

### C.  Section 455(a) and Rule 60(b)(6)

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  To evaluate a claim under § 455(a), courts "must consider whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality," and "recusal may be required even though the judge is not actually partial."  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003) (quotations and emphasis omitted).

Although § 455 does not, on its own, authorize relief when a judge should have recused himself, Rule 60(b)(6) of the Federal Rules of Civil Procedure provides a remedy.  *See Liljeberg*, 486 U.S. at 863; *Patterson*, 335 F.3d at 485-86.  Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."  *Liljeberg*, 486 U.S. at 863 (quoting Fed. R. Civ. P. 60(b)(6)).  The rule enables courts, in "extraordinary circumstances," "to vacate judgments whenever such action is appropriate to accomplish justice."  *Id.* at 864 (quotations omitted).  The Supreme Court has explained that Rule 60(b)(6) relief is "neither categorically available nor categorically unavailable for all § 455(a) violations."  *Id.*  Instead, in determining whether a judgment should be vacated for violation of § 455(a), courts must consider (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that the denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process."  *Id.* In the Fifth Circuit, "the 'harmless error' rule has long been applied in this context."  *Patterson*,

335 F.3d at 485; *see also Labranche v. Dep't of Def.,* 720 F. App'x 182, 185 (5th Cir. 2018) (applying harmless error rule as a component of the *Liljeberg* analysis).

Because Judge Guidry did recuse himself, this Court will assume that he should have, notwithstanding the opinion of the Committee on Codes of Conduct indicating that his recusal was not required.  So, the question is whether his failure to recuse earlier was harmless error[76] considering: (1) the risk of injustice to the parties in this case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process.  The Court finds that Judge Guidry's failure to recuse earlier was harmless error under the *Liljeberg* factors.

First, there is no risk of injustice to the parties in the case in refusing to vacate Judge Guidry's order and judgment because the Fifth Circuit will conduct a fair and impartial *de novo* review of Judge Guidry's dismissal order as well as the bankruptcy court's June 7, 2022 Order, if necessary.  The Fifth Circuit has repeatedly found no risk of injustice to the parties when the trial court's ruling is subject to *de novo* review – as is true here for both the bankruptcy court's and district court's rulings.  *Roberts*, 54 F.4th at 854 (holding that there was no risk of injustice to the parties in part because the party seeking vacatur "would have received a fair, impartial *de novo* review"); *Patterson*, 355 F.3d at 485 ("Because we review a summary judgment ruling *de novo*,

---

[76] Appellants argue that the harmless error analysis is only to be performed by the Fifth Circuit, not this district court.  However, a close reading of *Liljeberg* and *Patterson* indicates that the analysis is to be performed by the court handling the questions whether a judge should have recused and whether any failure to do so earlier requires that a judgment be vacated.  *See, e.g., Roberts v. Wal-Mart Stores*, 2022 WL 141677, at * 2-3 (W.D. La. Jan. 14, 2022) (involving a district judge's application of the harmless error standard when considering a Rule 60(b)(6) motion predicated on a prior district judge's failure to recuse earlier), *aff'd sub nom. Roberts v. Wal-Mart La., L.L.C.,* 54 F.4th 852, 854 (5th Cir. 2022) (approving district judge's application of harmless error standard to Rule 60(b)(6) motion to vacate and noting that the district judge "ably and succinctly applied the *Liljeberg* factors" to the questions about the recusal of another district judge once the case was reallotted to him).  Because it is sitting as an appellate court in bankruptcy and in Rule 60 review of the decision of another district judge who was also sitting as an appellate court in bankruptcy and who Appellants claim should have recused earlier, this Court is the court (like a court of appeals in the usual case) first called upon to answer the *Liljeberg* questions in this instance, so it may conduct the harmless error analysis that accompanies a complete examination of these questions.

using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling."). The Fifth Circuit "review[s] the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *In re ASARCO, L.L.C.,* 650 F.3d 593, 600 (5th Cir. 2011). As such, the Fifth Circuit will review Judge Guidry's August 11, 2022 dismissal order and, if necessary, the bankruptcy court's June 7, 2022 Order, under the same standards of review applied by Judge Guidry originally, so Appellants are guaranteed yet another fair and impartial review of these rulings. And there is no risk of injustice to Appellants themselves because their abuse claims are left intact and their interests are fully and ably represented by the other claimants who were appointed to serve on the Committee.

Second, there is no risk that denial of vacatur will produce injustice in other cases because this case presents different issues and is in a different posture than Trahant's appeals. This appeal was dismissed for lack of standing and that decision is on appeal at the Fifth Circuit, whereas Trahant's appeals were considered on the merits and have been considered independently and anew by this Court in connection with Trahant's motion for rehearing. Thus, there is no risk of inconsistent rulings and, if Trahant seeks review from the Fifth Circuit, there will be a second fair and impartial review by that court of the bankruptcy court's orders in these other proceedings. Indeed, granting vacatur would produce injustice in the Archdiocese's bankruptcy case because the drawn-out litigation of this ancillary issue (*viz.,* the removal of Appellants from the Committee when their interests are properly represented by others and their claims are unaffected) diverts attention and resources from the debtor's reorganization and the ultimate adjudication of the abuse claims.

Finally, denial of the relief sought be Appellants here (vacatur of Judge Guidry's dismissal order) does not risk undermining the public's confidence in the judicial process because the Fifth Circuit will independently weigh the merits of the district court's dismissal order and the bankruptcy court's June 7, 2022 Order removing Appellants from the Committee so as to preserve the integrity of the bankruptcy process (including the Committee's handling of sensitive and confidential information) and protect against any additional abuse (including additional disclosure of sensitive and confidential information by Appellants' attorney). On the other hand, "the public may be more inclined to lose faith in the system if this court were to mindlessly vacate [the recused judge's] rulings." *Patterson*, 335 F.3d at 486. Further, the public might also lose faith in the process if the judiciary protracts the bankruptcy case by reflexively granting a motion to vacate an interlocutory order dismissing an appeal for lack of standing where Appellants failed to show pecuniary harm, especially when the dismissal was equally warranted by the order's character as a non-appealable, non-final, interlocutory order since no sanctions were imposed by the bankruptcy court against Appellants in connection with its June 7, 2022 Order.[77]

In sum, Judge Guidry's failure to recuse earlier was harmless error and this Court will not vacate his prior order and judgment. This Court emphasizes that denying relief to Appellants on their motion to vacate does not convey a message to the sexual abuse survivors involved in the Archdiocese's bankruptcy case that they cannot find a fair forum in federal court. This appeal has nothing to do with the merits of their sexual abuse claims but deals instead with the professed right of certain individual claimants to continue their service on the Committee, notwithstanding their attorney's failure to abide by a court order and the bankruptcy court's obligation to protect the bankruptcy process from breaches in the handling of confidential information entrusted to the

---

[77] *See* 7 COLLIER ON BANKRUPTCY ¶ 1102.07[4], at 1102-33 ("Appeals of judicial decisions reviewing committee appointments have been held to be interlocutory.").

Committee.  It is the Court's hope that the stakeholders in the bankruptcy case can put these ancillary matters to rest, so they can get on with the primary goal of confecting and confirming a plan of reorganization for the debtor that will provide meaningful relief for the abuse claimants within the bankruptcy process.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Appellants' motion to vacate judgment (R. Doc. 57) is DENIED.

New Orleans, Louisiana, this 21st day of June, 2023.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE